**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re application of<br><br>FW DEEP VALUE OPPORTUNITIES FUND I, LLC,<br><br>Petitioner for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Civil Action No. 24-430-RGA |

<u>MEMORANDUM ORDER</u>

Before me is Respondents Carlyle Group Management and Carlyle Investment Management's (collectively, "Respondents") Objections to the Magistrate Judge's March 16, 2026, Memorandum Order (the "Magistrate Judge's Order") (D.I. 71). (D.I. 75). I have considered the parties' briefing. (D.I. 75, 80). For the reasons set forth below, Respondents' Objections to the Magistrate Judge's Order are OVERRULED.

## I.    BACKGROUND

Voltage BidCo GmbH ("Voltage"), an affiliate of Respondents, announced a voluntary takeover offer to acquire all outstanding Schaltbau shares; on the same day that the takeover offer was announced, Voltage announced it planned to buy out the remaining Schaltbau shareholders through a domination and profit loss transfer agreement. (D.I. 2 at 4–6). A group of Schaltbau shareholders, including FW Deep Value Opportunities Fund I ("Petitioner"), rejected the takeover offer and initiated an appraisal proceeding before a Munich court (the "Takeover Offer Appraisal Proceeding").[1] (D.I. 60 at ¶ 3). Petitioner initiated this ancillary proceeding under 28 U.S.C. §

---

[1] As the Protective Order in dispute uses the term "Appraisal Proceeding" to refer to a category of permissible uses of information produced under the Protective Order, I refer to the initial appraisal

1

1782 to obtain "limited discovery related to the valuation of German company Schaltbau" for use in the Takeover Offer Appraisal Proceeding. (D.I. 2 at 1). Subject to a protective order, Respondents voluntarily agreed to produce the documents Petitioner requested. (D.I. 23). The Court entered the Protective Order (D.I. 25), Respondents produced the requested documents (D.I. 57 at ¶ 6), and Petitioner voluntarily dismissed the action (D.I. 47).

After the action in this Court was closed, a group of shareholders who had accepted Voltage's takeover offer commenced a separate proceeding in the Munich court to challenge Voltage's compliance with German minimum price requirements (the "Minimum Price Proceeding").[2] (D.I. 59 at 2; D.I. 60 at ¶ 3). Petitioner was added as a plaintiff in the Minimum Price Proceeding. (D.I. 59 at 2 n.1). In the Minimum Price Proceeding, Petitioner filed seventeen documents that Respondents had produced as Confidential or Highly Confidential according to the Protective Order. (D.I. 57 at ¶ 8). Respondents sent Petitioner a letter demanding it withdraw the documents from the Minimum Price Proceeding. (D.I. 62-5, Ex. E). Petitioner refused, offering to negotiate another protective order or to file another application under 28 U.S.C. § 1782. (D.I. 71 at 3). Respondents rejected the offer and filed a motion to reopen the case. (D.I. 49). The parties submitted a joint motion for a teleconference to resolve the Protective Order dispute. (D.I. 50).

---

proceeding as the "Takeover Offer Appraisal Proceeding" to avoid any confusion. In their most recent letters, Petitioner refers to the Takeover Offer Appraisal Proceeding as "Munich Proceeding I" and Respondents refer to it as the "Appraisal Proceeding." The Magistrate Judge's Order refers to it as the "Appraisal Proceeding."

[2] As both proceedings are in the Munich court, and because Petitioner refers to both proceedings as a variation of the "Munich Proceeding," I refer to this proceeding as the "Minimum Price Proceeding" to avoid confusion. In their most recent letters, Petitioner refers to the Minimum Price Proceeding as "Munich Proceeding II" and Respondents refer to it as the "Munich Proceeding." The Magistrate Judge's Order refers to it as the "Munich Proceeding."

Once the case was reopened (D.I. 53), the parties submitted letters to the Court (D.I. 56, 59), including Respondents' request for sanction (D.I. 56). Based on the briefing, the Magistrate Judge issued an order resolving the dispute without a hearing. (D.I. 71). In her Order, the Magistrate Judge explained that the Protective Order allows the documents to be used in "related proceedings," including related proceedings outside of the Takeover Offer Appraisal Proceeding. (*Id.* at 4). The Magistrate Judge identified "core similarities" between the Takeover Offer Appraisal Proceeding and the Minimum Price Proceeding such as being brought by minority shareholders of Schaltbau, addressing the question of the value of Schaltbau shares during the takeover, and involving the evaluation of Schaltbau's business plan. (*Id.* at 5). Based on these similarities, she determined that the Minimum Price Proceeding was a "related proceeding" under the Protective Order. (*Id.*). Accordingly, Respondent's motion for sanctions was denied without prejudice. (*Id.*). Respondents filed these Objections to the Magistrate Judge's Order resolving the Protective Order dispute and denying sanctions. (D.I. 75).

## II.    ANALYSIS

### A. Standard of Review

Respondents argue that the Protective Order dispute is dispositive because the "dispute is all that is left in the case." (D.I. 75 at 1 n.1). Accordingly, Respondents assert that the Magistrate Judge's Order should be reviewed de novo. (*Id.*). In response, Petitioner argues that rulings on discovery disputes, including protective orders and discovery related sanctions, are non-dispositive orders. (D.I. 80 at 1). As a non-dispositive decision, Petitioner argues that the Magistrate Judge's Order should be reviewed for clear error. (*Id.*).

The Federal Magistrates Act allows district court judges to delegate certain matters to a Magistrate Judge. 28 U.S.C. § 636. "[T]he Act authorizes district courts to refer nondispositive

and dispositive motions to magistrate judges." *EEOC v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017). However, the district court uses different standards to review objections to a magistrate judge's determination on dispositive and nondispositive issues. "If a party objects to a magistrate judge's order regarding a nondispositive matter, the district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *City of Long Branch*, 866 F.3d at 99 (quoting FED. R. CIV. P. 72(a)). "If a party objects timely to a magistrate judge's report and recommendation [on a dispositive motion], the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)).

To my knowledge, the Third Circuit has not determined whether the enforcement of a protective order filed in a Section 1782 ancillary proceeding is dispositive or not.

"Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 98. While "discovery orders are not normally dispositive," *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 395 (3d Cir. 2021), the Third Circuit has recognized at least one exception to the general rule. In *N.L.R.B. v. Frazier*, 966 F.2d 812, 818 (3d Cir. 1992), the Third Circuit explained that whether to enforce an administrative subpoena is dispositive because the "decision [is] not a pretrial determination of a motion collateral to the main proceeding before the district court, but a final decision which disposed entirely of the Board's business before the court." While there are similarities between the decision to grant an application under Section 1782 and to enforce an administrative subpoena,[3] I need not decide whether the decision to grant

---

[3] The Third Circuit has not decided whether a magistrate judge's initial decision on a Section 1782 application is dispositive. *See In re Ex Parte Application of SPS I Fundo de Investimento de Ações*, 2022 WL 16571326, at * n.1 (D. Del. Nov. 1, 2022).

4

a Section 1782 application is nondispositive. The main purpose of the ancillary action before this Court is assistance obtaining discovery related to the valuation of Schaltbau for use in the Takeover Offer Appraisal Proceeding. The present dispute regarding enforcement of the Protective Order arose after Petitioner's application was granted and Respondents produced the requested discovery. Thus, the Protective Order dispute is collateral to the main issue in the ancillary action and functions like a traditional nondispositive discovery dispute.

It does not matter that the current discovery dispute is the only issue left before the Court in the Section 1782 proceeding. As other courts have explained, "whether an order is 'final' or 'immediately appealable' under 28 U.S.C. § 1291 is not the same as whether an order is dispositive for purposes of a magistrate judge's authority under 28 U.S.C. § 636 or Federal Rule of Civil Procedure 72." *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 72 (S.D.N.Y. 2019); *see Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *3 (N.D. Cal. Oct. 16, 2017). This is particularly true "in a § 1782 proceeding [because] there is nothing to be done 'on the merits.' . . . The only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal." *In re Application of the Republic of Ecuador*, 735 F.3d 1179, 1182 (10th Cir. 2013) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189 n.1 (3d Cir. 1999)); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011) (citing *Bayer*, 173 F.3d at 189 n.1)).

Nor does Respondents' request for sanctions change the conclusion that the Magistrate Judge's Order is nondispositive. Courts in this District have determined that orders granting sanctions that do not preclude a claim or defense (such as monetary sanctions) or denying requests for sanctions are nondispositive orders. *See Leonard v. Stemtech Int'l, Inc.*, 2012 WL 3655512, at *1 n.1 (D. Del. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4591453 (D. Del.

5

Sept. 28, 2012)[4]; *Klapper v. Commonwealth Realty Trust*, 657 F. Supp. 948, 952–53 (D. Del. 1987). Only sanctions which dispose of a claim, such as dismissing a party's claim with prejudice or enjoining a party from filing future lawsuits, have been found to be dispositive. *See GOLO, LLC v. Goli Nutrition Inc.*, 2023 WL 4305800, at *1 n.2 (D. Del. June 15, 2023), *report and recommendation adopted*, 2023 WL 4295430 (D. Del. June 30, 2023); *Rader v. ING Bank fsb*, 2010 WL 1403962, at *8 n.2 (D. Del. Apr. 7, 2010), *report and recommendation adopted*, 2010 WL 2403058 (D. Del. June 10, 2010). Courts across jurisdictions have generally come to the same conclusion that a motion for sanctions is nondispositive unless the sanction dismisses a claim in the action being litigated before the court. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5–6 (1st Cir. 1999); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir. 1995); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988).

This ancillary action only concerns discovery; by definition, the claims related to a Section 1782 proceeding are litigated in another court. Thus, there are no sanctions the Court could order that would dispose of any claim or defense. This conclusion is particularly true as Petitioner previously dismissed the action. (D.I. 47). In the Rule 11 context, the Ninth Circuit has explained that because "the parties had already settled the case prior to [plaintiff] filing his motion [that resulted in sanctions], the Rule 11 sanctions imposed in this case are properly characterized as non-dispositive."[5] *Maisonville*, 902 F.2d at 747.

---

[4] "Report and Recommendation" is used because the magistrate judge's order denying sanctions was included with a recommendation on a motion to dismiss.

[5] At least one court has found that a post-judgment discovery dispute is not a "pre-trial" matter and therefore cannot fall under § 636(b)(1)(A). *See Springs v. Ally Fin. Inc.*, 657 F. App'x 148, 152 (4th Cir. 2016) (citing *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993)). I do not think

Because the sanctions are nondispositive, "magistrates may impose prospective sanctions pursuant to Rule 37 where such sanctions are necessary to enforce compliance with a valid discovery order." *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991).

As the Magistrate Judge's Order is nondispositive, I will "review findings of fact for clear error" and "review matters of law de novo." *City of Long Branch*, 866 F.3d at 99.

## B. Violation of Protective Order

Respondents make three objections to the Magistrate Judge's Order.

### 1. Interpretation of the Protective Order

Respondents argue that the Protective Order only allows Petitioner to use documents in the Takeover Offer Appraisal Proceeding. (D.I. 75 at 1). Respondents argue that when the phrase "related proceedings" is read in the full provision of the Protective Order, viewed in the context of the Section 1782 application, and understood based on the intent of the parties at the time of agreeing to the order, it is clear that "related proceeding" can only be those "arising from the 'Appraisal Proceeding.'" (*Id.*). Petitioner responds that the magistrate judge's interpretation was correct and supported by the parties' negotiation of the Protective Order. (D.I. 80 at 2–3).

---

*Springs* applies to what we have in this case. While the authority given to magistrate judges to decide "pretrial" non-dispositive matters requires consideration of whether the protective order and sanctions dispute is "pretrial," the trial is going to occur in Germany at some future point. The section 1782 case is "pretrial" as it is occurring before any trial takes place. It is literally "pretrial." "[A]lthough a ruling on a § 1782 motion may terminate a matter before a U.S. court, it does not dispose of the underlying claims or defenses pending in the foreign or international tribunal." *In re Hilley Enters. Ltd.*, 400 F. Supp. 3d 62, 71–72 (S.D.N.Y. 2019) (citing *In re Duizendstraal*, 1997 WL 195443, at *1 (N.D. Tex. Apr. 16, 1997); *In re Pola Mar. Ltd. for Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 2018 WL 1787181, at *1 (S.D. Ga. Apr. 13, 2018); *Matter of a Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, 2015 WL 7258483, at *3 (D. Nev. Nov. 17, 2015)). There is no judgment in this case that acts as the division between "pretrial" and "post-trial."

"A consensual stipulation of the parties is to be interpreted according to the general principles of contract construction."[6] *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997) (internal quotation omitted). This rule applies to stipulations entered as an order by the court. *See Moore v. Ford Motor Co.*, 755 F.3d 802, 807 n.10 (5th Cir. 2014); *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010); *City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991) ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law."). "[T]he role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). "When interpreting contracts, we construe them as a whole and give effect to every provision if it is reasonably possible. A meaning inferred from a particular provision cannot control the agreement if that inference conflicts with the agreement's overall scheme." *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013).

The relevant portion of the Protective Order states:

> The Material produced or provided by Respondent shall be handled in accordance with this Stipulation, and shall be used by the Receiving Party (Petitioner, along with each German Party, as defined below, that has signed Exhibit A, is a "Receiving Party") only in the 1782 Proceeding, the action pending before the Munich I Regional Court, 5th Chamber for Commercial Matters in Munich, Germany (the "Munich Court") commenced by writ dated October 13, 2022, filed by Petitioner, with the heading case numbers 5 HK O 9734/22 e, as well as any appeals thereto *and any related proceedings* (the "Appraisal Proceeding"), or in connection with the taking of discovery from any party who is already the recipient of the Confidential Material or Highly Confidential Material as permitted herein and for no other purpose.

(D.I. 25 at 1–2 (emphasis added) (internal footnote omitted)). When taking out the additional descriptive material, the Protective Order identifies three instances that materials can be used, (1)

---

[6] "Because this objection involves the construction of the parties' Protective Order, the Court considers whether [the Magistrate Judge's] Order is "'contrary to law.'" *ECB USA, Inc. v. Savencia*, 2024 WL 4534210, at *1 (D. Del. July 11, 2024) (interpreting a protective order entered in the case prior to its transfer from the Southern District of Florida).

"the 1782 Proceeding," (2) the "Appraisal Proceeding," and (3) "in connection with the taking of discovery." (*Id.*). The present dispute involved the interpretation of "Appraisal Proceeding" as used in the Protective Order.

The quoted portion of the Protective Order is the only time "Appraisal Proceeding" is defined. The definition of Appraisal Proceeding has three components, (1) "the action pending before the Munich I Regional Court, 5th Chamber for Commercial Matters in Munich, Germany (the "Munich Court") commenced by writ dated October 13, 2022, filed by Petitioner, with the heading case numbers 5 HK O 9734/22 e," which is the action I am referring to as the "Takeover Offer Appraisal Proceeding," (2) "any appeals thereto," and (3) "any related proceedings." (D.I. 25 at 1–2). The parties agree that the Protective Order does not define "any related proceedings." (D.I. 56 at 2; D.I. 59 at 2).

While the term "any related proceedings" may be ambiguous when read alone, "a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours & Co v. Shell Oil Co.*, 498 A.2d 1108, 113 (Del. 1985). As used in the Protective Order, the "Takeover Offer Appraisal Proceeding" provision is not limited to specific actions or disputes within the larger case. As such, later raised issues within the Takeover Offer Appraisal Proceeding are already included in the permissible uses described in the Protective Order. If "any related proceedings" were to apply only to actions arising in the Takeover Offer Appraisal Proceeding, then the "any related proceedings" provision would be rendered meaningless. The term "any related proceedings" must, therefore, refer to proceedings separate from the Takeover Offer Appraisal Proceeding.[7] There is nothing in the Protective Order that requires a separate proceeding

---

[7] As the meaning of "any related proceedings" is clear and unambiguous when read in the context of the Protective Order, "the writing itself is the sole source for gaining an understanding of intent." *GB Biosciences Crop. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 481 (D. Del. 2003)

to "arise from" the Takeover Offer Appraisal Proceeding. Thus, "related" is understood broadly to include proceedings based on the same set of facts or underlying disputes. This understanding of "related" aligns with the plain meaning of the word[8] and the use of the term in the Protective Order.

Contrary to Respondents' arguments (D.I. 56 at 2–3; D.I. 75 at 1), it does not matter that the Protective Order uses the name "Appraisal Proceeding" to refer to the set of permissible uses of discovery. The chosen shorthand does not override the fact that "Appraisal Proceeding" is defined as three separate components: the Takeover Offer Appraisal Proceedings, any appeals, and any related proceedings. Nor does the tripartite reading of "Appraisal Proceeding" create conflict with any of the other twenty-six times the term is used in the Protective Order. The only limit created by the other uses of "Appraisal Proceeding" arises in paragraph ten of the Protective Order. Here, the Protective Order grants the Munich Court the power to determine how confidential materials can be used at trial or in other public forums in the Appraisal Proceeding. (D.I. 25 at ¶ 10). This distribution of responsibility indicates that "any related proceeding" may be limited to actions in the Munich Court.[9] Similarly, there is nothing in the Protective Order limiting "any related proceeding" to actions that existed at the time the Protective Order was signed. Rather, the Protective Order is necessarily forward looking as it applies to unknown future appeals. If the

---

(internal quotation omitted). Thus, I do not consider the redlined version of the Protective Order. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992).

[8] For example, one dictionary defines "related" as "connected by reason of an established or discoverable relation." *Related*, Merriam Webster, https://www.merriam-webster.com/dictionary/orientation (last updated July 25, 2026). Another defines related as "connected in some way" or "belonging to the same group because of shared characteristics, qualities, etc." *Related*, Britannica Dictionary, https://www.britannica.com/dictionary/related (last visited July 28, 2026).

[9] The Minimum Price Proceeding is occurring in the Munich Court. (D.I. 56 at 1; D.I. 59 at 1). As it is not relevant to the current dispute, nor does it change my interpretation of the Protective Order, I do not decide whether "any related proceeding" must be filed in the Munich Court.

parties wished for "any related proceedings" to apply only to actions known at the time they signed the Protective Order, they could have included such a restriction.

Thus, "any related proceedings" applies to actions separate from the Takeover Offer Appraisal Proceeding, including those arising after the Protective Order was signed.

### 2.  Whether the Minimum Price Proceeding is a "Related Proceeding"

Respondents argue that even using the interpretation of the Protective Order that the Magistrate Judge used, the Minimum Price Proceeding was not "related" because, under German law, "valuation in each proceeding asks distinct questions under different laws." (D.I. 75 at 3). Respondents state that the proceedings involve different legal standards, use different rules of civil procedure, involve distinct parties, rely on different evidence, and have no bearing on the factual or legal findings in one another. (D.I. 56 at 3).  Petitioner responds by arguing that the Minimum Price Proceeding is related to the Takeover Offer Appraisal Proceeding because both disputes arose from the same incident, involve similar parties, and have overlapping factual questions. (D.I. 80 at 3–4; *see* D.I. 59 at 2–3).

The Minimum Price Proceeding arose from the same set of events (i.e., Voltage's voluntary takeover offer) that gave rise to the Takeover Offer Appraisal Proceeding.  Petitioner and Respondents are parties to both proceedings.  Both proceedings ultimately involve the valuation of Schaltbau shares, even if different portions of the evidence are relevant to each valuation.[10]  The two proceedings are "connected by" shared factual origins, and the overlap in the parties,

---

[10] Of the documents relevant to both proceedings, Respondents argue that no portion of the documents relevant in the Minimum Price Proceeding are relevant in the Takeover Offer Appraisal Proceeding. (D.I. 75 at 3).  Petitioner responds by arguing that this argument is improper because Respondents raised this argument for the first time in their Objections. (D.I. 80 at 1–2).  I do not address this dispute because the overlap in relevant documents is enough evidence of relatedness when viewed alongside the other related elements.

questions, and evidence are "shared characteristics [and] qualities." These similarities between the proceedings meet the Protective Order's definition of "related." The fact that there are differences between the proceedings does not change this.

Therefore, the Minimum Price Proceeding is "related to" the Takeover Offer Appraisal Proceeding for purposes of the Protective Order.

### 3. Other Violations of the Protective Order

Respondents argue that the Magistrate Judge's Order failed to address two of its arguments, (1) that Petitioner used confidential information to purchase a claim and to commence separate litigation (the "collateral purpose argument"), and (2) that the dissemination of protected materials to other plaintiffs in the Minimum Price Proceedings violated the Protective Order (the "dissemination of protected materials argument"). (D.I. 75 at 4).

Respondents do not provide a citation identifying where the collateral purpose argument was addressed in their original letter. (D.I. 75 at 4). I could not find any discussion in Respondents' letter[11] (D.I. 56) or in the declarations submitted in support (D.I. 57; D.I. 58) regarding Petitioner's collateral purpose argument. The Court has a standing order that states: "Any party filing objections . . . **must** include . . . a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and describing the good cause for failing to previously raise [them] before the Magistrate Judge." Standing Order for Objections Filed under FED. R. CIV. P. 72 (D. Del. Oct. 9, 2013) (emphasis in

---

[11] The closest thing I could find in Respondents' initial letter was the statement, "Notably, Petitioner only attempted to acquire standing in the Munich Proceeding via an assignment negotiated after it obtained 1782 discovery." (D.I. 56 at 3). However, Respondents include this statement in a paragraph arguing that the parties could not have known that Petitioner would have standing in the Minimum Price Proceeding until after the Protective Order was signed. There is nothing connecting this statement to an argument that this conduct constituted a violation of the Protective Order.

original) (available on the Court's website). Respondents filed such a written statement with their objections. (D.I. 75-1). It identified one new argument, but it did not identify the collateral purpose argument. Thus, Respondents have not shown good cause as to why I should decide an issue that was not before the Magistrate Judge. The certification requirement is not some arcane requirement. It is a practical one, designed to make referrals to magistrate judges as efficient as the referral system can be. Respondents' collateral purpose argument is thus overruled. *See Rogers v. Wilmington Trust Co.*, 2019 WL 4596650, at *2 (D. Del. Sept. 23, 2019).

Respondents' dissemination of protected materials argument was not presented as an independent argument in its initial letter. Instead, the argument was phrased as support for its position that Petitioner knew that the Minimum Price Proceeding was not related. (D.I. 56 at 3). The relevant portion of Respondents' initial letter states:

> Under Petitioner's reading, "Appraisal Proceeding" includes the [Minimum Price] Proceeding. But if that were so, Petitioner had to cause parties in the [Minimum Price] Proceeding to execute Certificates of Acknowledgement as a precondition to receiving Carlyle's materials. PO ¶ 4. Petitioner also had to provide Carlyle prior "written notice" of the Reply. *See id.* ¶¶ 10–11. Petitioner did neither, Basso Decl. ¶¶ 8–9, because it understood "related proceedings" exclude the [Minimum Price] Proceeding.

(D.I. 56 at 3). As the wording of this portion was not presented as an independent argument, there was no reason for the magistrate judge to address it in her Order. Respondents did not identify the dissemination of protected materials argument in their Certification required under the Standing Order. (D.I. 75-1). Without identifying the argument in the Certification, Respondents have not shown good cause as to why I should decide an issue that was not before the Magistrate Judge. Respondents' dissemination of protected materials argument is thus overruled.

Respondents' Objections to the Magistrate Judge's Order (D.I. 75) are OVERRULED. Respondents' motion for sanctions (D.I. 56) is DENIED.

13

IT IS SO ORDERED.

Entered this 6th day of August, 2026

_____
United States District Judge